IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CSAA AFFINITY INSURANCE COMPANY** a/s/o WALTER & MARY MITCHELL, | * |
| | * |
| **Plaintiff,** | |
| | * Case No.: 1:21-cv-01543-JKB |
| v. | |
| | * |
| **THE SCOTT FETZER COMPANY** a/k/a WAYNE/SCOTT FETZER COMPANY d/b/a WAYNE WATER SYSTEMS, | * |
| | * |
| **Defendant.** | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR SPOLIATION SANCTIONS AND FOR SUMMARY JUDGMENT**

CSAA's opposition fails to confront the applicable law and the relevant record of this product liability case. CSAA's half-hearted effort does not salvage a requisite design-defect opinion sufficient to stave off summary judgment. As for spoliation, CSAA's brief sidesteps the implications of its destruction of the Wayne Water product it blames for the fire—as well as CSAA's destruction of other electrical devices that were obvious possible fire sources. Wayne Water's motion should be granted.

**I.   SUMMARY JUDGMENT**

**A. CSAA's design defect opinion remains inadequate to forestall judgment.**

CSAA's origination theory with this more than a decade old sump pump remains half-baked. Graham merely provides ipse dixit testimony on the fire's supposed origin. *See,* Ex. A, Graham dep., pp. 97:19-100:4. He cannot opine that it was a design or manufacturing flaw, and even concedes that it was possible that corrosion resulted in the resistance that led to this fire. Ex. A, Graham dep., pp. 161:17-162:12. Said simply, in a case where CSAA claims Wayne Water's pump caused the fire, CSAA did not provide expert testimony on *how* Wayne Water's pump

supposedly caused the initial fire, much less how it can be tied to Wayne Water—as opposed to another outside influence. This is insufficient. *See Harrison v. Bill Cairns Pontiac, Inc.*, 77 Md. App. 41 (1988).

As to Graham's "design flaw" opinion, CSAA claims that testing was not needed to support Graham's say-so that if Wayne Water used thermoset plastic material on the pump's housing, the fire would not have occurred. Pl.'s Opp'n at 8. While claiming that the properties of "thermoset plastic are well known within the scientific community" CSAA provides not a single citation in support of this proposition. Pl.'s Opp'n at 4. This is inadequate to demonstrate that Graham's alternate designs are safer than this pump's design, nor that they were technically feasible. *See Nissan Motor Co. v. Nave*, 129 Md. App. 90, 119 (1999). Given the amplified risk exposing jurors to dubious unsupported scientific testimony presents in product liability cases, Graham's short-changed opinion is insufficient to carry CSAA's burden. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021).

Compare CSAA's omission to the evidentiary showing in the same caselaw that CSAA cites. Specifically, in *Severn Peanut Co. v. Indus. Fumigant Co.*, the challenged expert's proponent "demonstrated that phosphine gas . . . is a recognized fire hazard in both scientific literature and in the fumigation industry." No. 2:11-CV-14-BO, 2014 U.S. Dist. LEXIS 34507, at *7 (E.D.N.C. Mar. 15, 2014). The proponent went on to point to EPA labels that provided "clear warnings and explanations of the risk of ignition" as well as the "general academic acceptance of" the expert's theory of ignition. *Id.* CSAA fails to identify a single scientific article, industry guidance, or even a warning label in support of Graham's alternative suppositions. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 290 (4th Cir. 2021) ("[A] plaintiff may not prevail in a products liability case

2

by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field.").

Even if CSAA provided scientific support of some kind for Graham's claim, CSAA faces a more foundational problem: At no point did Graham conduct testing or perform any research to determine the pump's actual housing material. Instead, he merely speculates that, due to the "appearance of the plastic" it did not "appear" to be thermoset plastic material. Ex. A, Graham dep., p. 128:1-11. That does not suffice under Maryland law. *See Virgil v. "Kash N' Karry" Serv. Corp.*, 61 Md. App. 23, 32 (2005) (explaining that proof of a defect "must arise above surmise, conjecture or speculation").

Nor has CSAA shown that it was feasible to manufacture the pump with thermoset plastic at the time it was manufactured. *See Nissan Motor Co.* 129 Md. App. at 119. While CSAA contends that this burden lies with Wayne Water—the authority they cite for that proposition makes that assertion in dicta within a footnote that cites no authority in support. *See Thompson v. Ethicon, Inc.*, No. SAG-19-03159l, 2020 U.S. Dist. LEXIS 121053, at *14 n.2 (D. Md. July 10, 2020). Moreover, the plaintiff experts in that case *did* advance alternate designs that "outperformed" the product at issue "in every design attribute except cost[,]" and there was "evidence that" the defendant saw that alternative design as "easier to manufacture and sterilize," and that the alternative safer design for that product existed on the market at the time of manufacture. *Id.* at *13-14. CSAA has done none of this here—and fails to cite a single sump pump that uses thermoset or metal housing—much less one manufactured at the same time as this one. And it is revealing that CSAA entirely fails to address that the pump was designed and tested in accordance with both the U.S. and Canadian regulations, UL778 and CSA-C22.2 No. 108. Ex. B, Defendant's Answer to Plaintiff's Interrogatory No. 2.

3

### B. CSAA's warranty claims necessarily falls alongside its design defect claims.

As CSAA's design defect claim falls, so too must its dependent warranty claims for the same reasons Wayne Water originally articulated in its motion. *See Harrison v. Bill Cairns Pontiac, Inc.*, 77 Md. App. 41, 56 (1988).

### C. CSAA abandoned its remaining claims.

CSAA's opposition expressly withdrew its counts for breach of implied warranty for a particular purpose. *See* Pl.'s Opp'n at 20, n5. Beyond that, CSAA did not respond to Wayne Water's arguments on the failure-to-warn allegations. CSAA has, thus, abandoned those claims as well. *See Kulish v. Rite Aid Corp.*, Civil Action No. ELH-11-3178, 2012 U.S. Dist. LEXIS 176760, at *26 (D. Md. Dec. 13, 2012) (citations omitted).

## II. SPOLIATION

### A. The pre-litigation inspection did not relieve CSAA of its preservation obligations.

CSAA claims that the October 2018 joint inspection of the pump "warrants no sanction" for spoliation as Wayne Water suffered no prejudice because of CSAA's Fall 2019 destruction of the pump. CSAA—having sat on its hands during discovery in this matter—ignores the record of this case and tries to blame others for its idleness.

If Graham's speculation—first articulated this year—that *this* pump's housing was insufficient to contain the fire, the only means Wayne Water had to disprove Graham's theory would be to test *this* pump's housing. CSAA's destruction of the pump prevents Wayne Water from doing so. And the 2018 inspection does not suffice for this purpose. That is because the focus of the October 2018 inspection was whether the impeller[1] of the pump was jammed with a foreign object (it was not), which may have resulted in the pump over-heating. Graham's 2022 opinion

---

[1] By rotating, the pump's impeller pumped the water from the sump.

has nothing to do with the impeller but is instead a new theory of the cause of the fire that no one from Wayne Water was privy to until more than two years *after* CSAA destroyed the pump. That is, Wayne Water cannot now look at or test the pump's housing and the underlying electrical components which Graham opines are the source of the heat and/or his claimed defect.

Moreover, Wayne Water has related that CSAA's failure to preserve the pump and the other electrical devices stymied Wayne Water's ability to adequately defend itself. In his expert report, Bill Peck, Wayne Water's fire origin expert, expressly stated that CSAA's failure to preserve the pump *and* the bathroom electrical devices limited his ability to address the fire's suspected cause/s. Ex. C, Peck Report, p. 2. CSAA never deposed him. Likewise, Wayne Water specifically noted, in its expert designation, that the Wayne Water engineer present at the inspection could address it. Ex. D, Defendant's Designation of Expert Witnesses.  CSAA never deposed him. That is, CSAA has done nothing to contest Wayne Water's position that it was prejudiced in defending itself due to CSAA's spoliation.

Against this, CSAA throws up inadmissible hearsay—contained in an affidavit from Graham signed the day before CSAA's motion was filed—in which Graham claims that Wayne Water's representatives were, "following the completion of the joint laboratory examin[ation]," uninterested in conducting further inspections of the pump. Those representatives are available to testify (and thus FRE 804(b)(2) does not apply to any such statements), and CSAA offers no argument that this hearsay would otherwise be admissible in its Opposition.

**B. CSAA addresses a strawman instead of Wayne Water's preservation argument.**

In response to Wayne Water's ample authority showing that CSAA was required to preserve the pump and other electric devices, CSAA distorts Wayne Water's spoliation claim, asserting that: (i) Wayne Water maintains that all electric devices need be preserved "regardless of whether they were located within the zone of the fire origin or whether they exhibited any

evidence of internal failure."; and (ii) Wayne Water believes CSAA should have preserved "every electronic device in the basement . . . regardless of its location or its condition." Pl.'s Opp'n at 12. That is not Wayne Water's argument.

Wayne Water argues merely that possible ignition sources within the area destroyed should be preserved so that they can be ruled in—or out—as causes of the fire. Here, those include the heavily damaged devices in the severely damaged bathroom and the pump itself. All should have been preserved as possible ignition sources but were not.

Every relevant witness and authority agrees that multiple devices should be inspected and/or preserved:

- Fire Marshall Alkire testified that he would want to inspect the electrical devices in the bathroom (he hadn't) "[b]ecause they're certainly areas of origin or points of origin that I would have wanted to look at, get a closer examination." Ex. E, Alkire dep., pp 55:14-56:2.

- Wayne Water's expert Bill Peck testified that if "the basic methodology of fire investigation outlined in NFPA 921 had been followed these items would have been preserved and tested as [] potential sources of ignition." Ex. C, Peck Report 11.

- CSAA's expert Graham removed the bathroom's relocatable power tap from the bathroom, took it outside, and photographed it. Ex. F, picture. Even Graham's assistant testified that it is "normally more than one item that I examine . . . that are collected in a scene[,]" and examined items exhibit fire damage. Ex. G, Zalamia dep., p. 21:7-22.

- The NFPA—otherwise relied upon by CSAA and Graham—says so. NFPA 921 §4.4.4 ("valuable physical evidence should be recognized, documented, properly collected, and preserved . . ."); §17.3.1.1 ("evidentiary or interpretive value of various pieces of

physical evidence observed at the scene may not be known until, at, or near the end of the fire scene examination . . . [a]s a result, **the entire fire scene should be considered physical evidence and should be protected and preserved**."); and §17.5.7 ("Appliances may be collected as physical evidence to support the fire investigator's determination **that the appliance was or was not** the cause of the fire . . . [this] may include . . . toasters, coffee pots, radios, irons, lamps." (emphasis added)).

Most importantly, this Court agrees that multiple devices should be inspected and/or preserved. *Cf. Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 511-12 (D. Md. 2009) (explaining that the duty of preservation extends to information that is relevant to the claims or defenses of any party, or which is "relevant to the subject matter involved in the action.") (quotation omitted).

In short, CSAA's failure to preserve other devices precludes Wayne Water from examining them to see if they are a possible ignition source. All were in severely damaged areas and severely damaged themselves.[2] Yet not one was preserved for Wayne Water's inspection—despite the weight of authority providing that they should have been.

### C. Wayne Water's spoliation motion was timely filed.

Under CSAA's own cited authority—and the circumstances here—Wayne Water's motion is timely. The motion was timely in *Goodman v. Praxair Servs., Inc.*, even though it was filed more than five months after discovery closed (and two months *after* dispositive motions were fully briefed). 632 F. Supp. 2d 494, 509 (D. Md. 2009). As for *Al-Sabah v. Agbodjogbe*, the motion—filed more than a year after discovery closed—was untimely. Civil Action No. ELH-17-730, 2019 U.S. Dist. LEXIS 158311, at *5 (D. Md. Sep. 17, 2019). That is, Wayne Water's motion was filed

---

[2] The devices at issue include the bathroom's light fixture, exhaust fan, space heater, and relocatable power tap.

eleven months before *Al-Sabah*'s untimely motion, and four months before *Goodman*'s timely motion.

And while Wayne Water's motion is timely under either *Goodman* or *Al-Sabah*, it is notable that CSAA withheld news of the pump's September 2019 destruction from Wayne Water for more than and a half-years, including nearly a year while this action was pending. It did so despite Wayne Water repeatedly seeking inspection of the pump in formal discovery and informal requests from counsel. Ex. H, Defendant's Requests for Production No. 23. It took until February 2022 for CSAA to tell Wayne Water that the pump had been "discarded" *after* CSAA produced Graham's report. Ex. I, Email.

It took another two months for Wayne Water to learn it was destroyed in CSAA's custody. Ex. A, Graham dep., pp. 134-35. And the following month, Wayne Water continued to pursue information about the destruction at the deposition of Graham's assistant.[3] Simply put, it took CSAA *twenty-nine months* after CSAA destroyed the pump for it to inform Wayne Water that it had done so, and *thirty-one months* before Wayne Water had any detail. This Motion timely followed two months later, after discovery of the facts that underlie it. *See Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009).

**D. CSAA's conduct warrants dismissal.**

CSAA asserts that it and its experts "acted in good faith at all times" without citing anything in the record to support its exculpatory claim. And for good reason.

Even where "prejudice is minimal," the "harshest sanctions may apply" when "the culpability is great" *First Mariner Bank v. Resolution Law Grp., P.C.*, No. MJG-12-1133, 2014

---

[3] Wayne Water asked Graham's assistant if he knew any people at work with the same names that Graham had floated as the pump's signatory. Ex. G, Zalamia dep., p. 51; Ex. A, Graham dep., p. 136.

U.S. Dist. LEXIS 55379, at *39 (D. Md. Apr. 22, 2014). Where the "spoliator's conduct [is] so egregious" it amounts "to a forfeiture of his claim[.]" *Silvestri v. GMC*, 271 F.3d 583, 593 (4th Cir. 2001). CSAA's conduct—from a sophisticated subrogation party, and a sophisticated expert—is remarkable.

      CSAA—a sophisticated litigant—knew the pump was important to this claim. CSAA still inexplicably destroyed it. It then withheld this information from Wayne Water for more than two-and-a-half *years*, including nearly a year over which it pursued this claim. CSAA has advanced no argument or factual basis to justify its failure to timely alert Wayne Water of the destruction. And while these circumstances are so egregious as to suggest bad faith, it is not required for this Court to find spoliation and grant dismissal. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010).

Dated this 30th day of August 2022    Respectfully submitted,

      */s/ Thomas J. S. Waxter III*
Thomas J. S. Waxter III (Bar No. 10388)
tjw@gdldlaw.com
Matthew H. Tranter (Bar No. 21389)
mtranter@gdldlaw.com
**Goodell, DeVries, Leech & Dann LLP**
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000 / Fax: (410) 783-4040
***Attorneys for Defendant***
***Wayne/Scott Fetzer Company d/b/a Wayne Water Systems (incorrectly identified as The Scott Fetzer Company in the Complaint)***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of August 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sends electronic notification of such filing to all CM/ECF participants.

*/s/ Thomas J. S. Waxter III*
Thomas J. S. Waxter III

4866-8072-8366, v. 4